**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| ANTOINE ADEM, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:11-CV-2102-JAR |
| ) | |
| JEFFERSON MEMORIAL HOSPITAL ) | |
| ASSOCIATION, d/b/a/ JEFFERSON ) | |
| REGIONAL MEDICAL CENTER, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Jefferson Memorial Hospital Association d/b/a Jefferson Regional Medical Center and Warren Mark Breite, M.D.'s Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim Upon Which Relief can be Granted and for Lack of Subject Matter Jurisdiction [ECF No. 17] and Plaintiff Antoine Adem M.D.'s Motion for Partial Summary Judgment [ECF No. 33]. The motions are fully briefed and ready for disposition. The Court will first address Defendants' motion to dismiss, as the granting of that motion would render Plaintiff's motion for summary judgment moot.

**Background**[1]

This action arises out of the termination of Plaintiff Antoine Adem, M.D. ("Dr. Adem")'s medical staff privileges at Defendant Jefferson Memorial Hospital Association, d/b/a Jefferson Regional Medical Center ("JRMC"). Defendant Warren Mark Breite, M.D. ("Dr. Breite") is

---

[1]The factual background is taken from Dr. Adem's First Amended Complaint, as well as from JRMC's recitation of the chronology of events in the peer review process taken from its Memorandum in Support of Motion to Dismiss (Doc. No. 18). Dr. Adem adopts JRMC's recitation in his Motion for Partial Summary Judgment. (Doc. No. 33, ¶ 3)

JRMC's Vice President of Medical Affairs and a member of the JRMC Medical Executive Committee ("MEC").

Dr. Adem, an invasive/interventional cardiologist, was granted staff membership and privileges by JRMC in 2002. In 2008, an investigation pursuant to Article 6 of JRMC's Medical Staff Bylaws ("the Bylaws") was opened in response to a complaint made about Dr. Adem. The Medical Care Appraisal Committee ("MCAC") recommended Dr. Adem's privileges be terminated as a result of unethical conduct and upon a finding that he had performed unnecessary medical procedures. On February 9, 2010, Dr. Adem was notified by JRMC of its summary suspension of his invasive/interventional cardiology privileges. On April 26, 2012, the MEC notified Dr. Adem that it was recommending to the JRMC Board of Directors ("the Board") that his privileges and medical staff membership be terminated. Dr. Adem then requested a hearing before a Hearing Review Committee ("HRC"). Under the Bylaws, the HRC acts as a fact-finding tribunal. On June 7, 2011, following six evidentiary hearings comprising over forty hours of testimony from fact and expert witnesses, the HRC concluded that JRMC did not provide conclusive evidence that Dr. Adem's medical procedures were unnecessary or harmful. However, the HRC agreed with the previous findings of both the MCAC and MEC that Dr. Adem had engaged in unethical conduct by submitting a false letter in an attempt to influence decisions regarding his privileges. The HRC recommended, by a vote of 2 to 1, that Dr. Adem's privileges be reinstated.

On June 23, 2011, the MEC met to review the HRC's decision and issued its final recommendation to the Board that Dr. Adem's privileges be suspended for fourteen days, a suspension he had already served, and that his medical staff membership and privileges be

terminated as discipline for the ethical issue. As a result of its decision on the ethical issue, its recommendation on the medical issues was rendered moot.

Dr. Adem appealed under Section 7.5-2(b) of the Bylaws. An Appeal Board comprised of eight Board members heard arguments and reviewed written briefs. On September 1, 2011, the Appeal Board issued its decision and findings of fact and conclusions of law affirming the MEC's final recommendation, and terminating Dr. Adem's privileges.

Dr. Adem alleges that prior to the Board's decision, he had a thriving cardiology practice at JRMC predicated on his ability to admit patients to JRMC, utilize JRMC facilities and staff to test, diagnose and treat his patients, and accept referrals of prospective patients from other members of the JRMC medical staff, all of which has been substantially impaired by the termination of his privileges.

In this action, Dr. Adem seeks a declaratory judgment that JRMC's Bylaws are invalid because they failed to afford him a fair hearing procedure and that Defendants violated his legal rights by conducting a hearing that was unfair, unlawful and racially motivated. Dr. Adem also seeks injunctive relief and damages for alleged tortious interference with business expectancy and breach of contract as well as for violations of 42 U.S.C. § 1981, all based on the revocation of his medical staff privileges at JRMC. Jurisdiction in this Court relies on the claim raised in Count III for violations of 42 U.S.C. § 1981.

**Legal Standard**

**Motion to Dismiss**

In ruling on a motion to dismiss, the Court must view the allegations in the complaint liberally in the light most favorable to the plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806

3

(8th Cir.2008) (citing Luney v. SGS Auto Servs., 432 F.3d 866, 867 (8th Cir.2005)). Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir.2005) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). Thus, as a practical matter, a dismissal under Rule 12(b)(6) should be granted "only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief." Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317 (8th Cir.2004). The issue on a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his or her claim. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995).

**Count III - 42 U.S.C. § 1981**

Because Count III is the basis for Dr. Adem's assertion that jurisdiction is proper in this Court, the Court will address Defendants' motion to dismiss with respect to this claim first. Dr. Adem alleges a claim of racial discrimination under 42 U.S.C. § 1981, specifically, that Defendants were motivated by racial animus towards him, a person of Arabic race and Lebanese national origin, in pursuing the charges against him, and that the Board's decision to revoke his medical staff privileges "was precipitated, in substantial part, by racial animus" towards him. (First Amended Complaint ("FAC"), ¶ 33)

To establish a prima facie case of discrimination, a § 1981 plaintiff must show (1)

membership in a protected class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity; and (4) interference with that activity by the defendant. Gregory v. Dillard's, Inc., 565 F.3d 464, 469 (8th Cir. 2009) (citing Green v. Dillard's, Inc., 483 F.3d 533, 538 (8th Cir. 2007); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir.2004)). Section 1981 prohibits racial discrimination in "all phases and incidents" of a contractual relationship, but "does not provide a general cause of action for race discrimination." Gregory, 565 F.3d at 468 (citing Youngblood v. Hy-Vee Food Stores, Inc., 266 F.3d 851, 855 (8th Cir.2001). Therefore, a claim brought under § 1981 must initially identify a protected contractual relationship or interest under which the plaintiff has rights. Id. (citing Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 477 (2006)). Defendants urge dismissal of Dr. Adem's claim because he has not identified a contractual relationship that could form the basis of a § 1981 claim.

**Arguments of the Parties**

In support of their motion, Defendants state that under Missouri law, medical staff bylaws do not create contracts between physicians and hospitals because there is no consideration. See Egan v. St. Anthony's Medical Center, 244 S.W.3d 169 (Mo.banc 2008) and Zipper, D.O. v. Health Midwest, 978 S.W.2d 398 (Mo.Ct.App. 1998). (Memorandum in Support of Motion to Dismiss, Doc. No. 18, pp. 4-5) With respect to Dr. Adem's allegations that contractual relationships with patients and business opportunities with colleagues form the basis of his claim, Defendants argue the termination of Dr. Adem's staff privileges does not interfere with his ability to contract; rather, it is his ability to treat patients at JRMC, a benefit of his privileges, that has been affected. (Id., pp. 6-7) Moreover, Dr. Adem has failed to identify any contract he attempted to enter or maintain that has been interfered with by the Board's decision.

5

(Id., p. 7) Finally, Defendants argue that even if Dr. Adem could demonstrate a contractual relationship in which he has rights, he has not pled facts sufficient to demonstrate discriminatory intent. (Id., pp. 9-10)

In response, Dr. Adem argues that JRMC made the Bylaws a binding contract through its acceptance of his application for membership on the medical staff. (Memorandum in Opposition, Doc. No. 24, p. 6) By virtue of paying annual dues pursuant to section 2.6 of the Bylaws, Dr. Adem contends he entered into a bargained for exchange of consideration with JRMC, whereby JRMC obligated itself to act in accordance with the Bylaws. He cites Ennix v. Stanten, 556 F.Supp.2d 1073 (N.D. Cal. 2008), in support of his claim. In Ennix, an African-American cardiac surgeon sued a hospital and physicians under § 1981, claiming racial discrimination in connection with a medical peer review that resulted in a temporary loss of hospital privileges. The Northern District of California, at summary judgment, held there was a genuine issue of material fact as to whether or not a contractual relationship existed between the surgeon and the hospital. Dr. Adem also alleges Defendants' discrimination has impaired his "quasi-contractual" obligation to care for his existing patients by virtue of his inability to treat them at JRMC, and precluded him from consummating such contractual relationships with potential patients who want to or must be treated at JRMC. (Id., p. 5)

In reply, Defendants reiterate their position that under Missouri law, medical staff bylaws cannot be considered a contract, and that if a hospital wants to impose duties and incur obligations with its employees, it must do so in a separate document that is not the bylaws. See Zipper, 978 S.W.2d at 417. (Defendants' Reply to Plaintiff's Memorandum in Opposition, Doc. No. 27, p. 6) Dr. Adem has not pled the existence of such a document. Furthermore, the Bylaws

6

themselves specifically state in section 7.6-5 that "nothing set forth in these Bylaws shall be deemed to establish any contractual rights..." (Id., p. 5)

**Discussion**

Dr. Adem advances two theories as to why the termination of his medical staff privileges violated rights protected under § 1981. First, he contends the termination of his privileges violated his contractual relationship with JRMC. Second, Dr. Adem contends the termination of his privileges impaired his contractual relationships with patients and business opportunities with colleagues.

With respect to Dr. Adem's alleged contractual relationship with JRMC, the Bylaws provide that "nothing set forth in these Bylaws shall be deemed to establish any contractual rights..." Section 7.6-5. Where medical staff bylaws specifically state that they do not constitute a contract, courts have held they confer no contractual rights. See Grain v. Trinity Health, 431 Fed.Appx. 434 (6th Cir. 2011), holding that medical staff bylaws did not constitute a contract given unambiguous language stating they "shall not constitute a contract between the medical staff and the hospital." Id. at 450. See also, Jimenez v. Wellstar Health System, 596 F.3d 1304, 1309 (11th Cir. 2010), holding that, for purposes of a § 1981 claim, medical staff bylaws created no contract between a hospital and a doctor where the bylaws stated, "[m]embership on the Medical Staff does not create a contractual relationship between WellStar or any Medical Staff and the Medical Staff Member."

In addition to the plain language of the Bylaws, the law in Missouri is clear that medical staff bylaws do not constitute a contract between doctors and hospitals. For this reason, Dr. Adem's reliance on Ennix is misplaced. In Missouri, the essential elements of a contract are: (1)

competency of the parties to contract; (2) subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. Zipper, 978 S.W.2d at 416 (citations omitted). A valid contract must include an offer, an acceptance and consideration. Id. (citing Johnson v. McDonnell Douglas Corp., 745 S.W.2d 661, 662 (Mo. banc 1988)). Hospital bylaws cannot be considered a contract under Missouri law because there is no consideration. By state board of health regulation, Missouri hospitals are required to adopt bylaws governing their professional activities. Zipper, 978 S.W.2d at 416 (internal quotation omitted). "[A] promise to do that which one is already legally obligated to do cannot serve as consideration for a contract." Id. "Additionally, there is no bargained for exchange as to the procedures adopted in hospital bylaws as required to have an enforceable contract." Id. This is because the hospital has the right to change the bylaws unilaterally and impose those bylaws on its medical staff. Id. See also Egan, 244 S.W.3d at 174 ("A hospital's duty to adopt and conform its actions to medical staff bylaws as required by the regulation is a preexisting duty, and a preexisting duty cannot furnish consideration for a contract. A hospital's obligation to act in accordance with its bylaws, in other words, is independent of any contractual obligation the hospital may have to the doctor.")

In further support of his alleged contractual relationship with JRMC, Dr. Adem contends that by accepting his application for staff membership "on terms and conditions that JRMC set forth in its application form," JRMC has made the Bylaws a binding contract. (Plaintiff's Memorandum in Opposition, Doc. No. 24, p. 6 (citing FAC, ¶¶ 4, 7)) He also asserts that his payment of annual dues to JRMC is "consideration" for JRMC's continuing extension of privileges and staff membership to him. The Eighth Circuit recognizes that under Missouri law, a hospital can be subjected to contractual enforcement of its medical staff bylaws if a contractual

relationship is established in a separate document. See Madsen v. Audrain Health Care, Inc., 297 F.3d 694, 699 (8th Cir. 2002) (citing Zipper, 978 S.W.2d at 417). Dr. Adem has not, however, identified any document in which JRMC separately sets forth its obligations under the Bylaws. He has not alleged that the Bylaws were incorporated into his membership application, and he has not attached a copy of the application to his complaint. Again, if a hospital wants to impose duties and incur obligations with its employees, it must do so in a separate document that is not the bylaws. See Zipper, 978 S.W.2d at 417. Because the Bylaws are not considered a contract under Missouri law, and because Dr. Adem does not allege that JRMC separately obligated itself to comply with any other set of standards, his allegations regarding his payment of dues or the acceptance of his membership application are insufficient to form the basis of a separate contractual relationship.

Thus, in light of the well established law in Missouri, and the Bylaws' unambiguous language repudiating the existence of a contract, the Court finds JRMC's medical staff bylaws do not constitute a contract between Dr. Adem and JRMC.

In addition to claiming a contractual relationship with JRMC as a basis for his § 1981 claim, Dr. Adem alleges Defendants' conduct has impaired his contractual opportunities with patients and colleagues. Specifically, he contends that Defendants have interfered with his "quasi-contractual" obligation to care for his existing patients by virtue of his inability to treat them at JRMC, and precluded him from consummating such contractual relationships with potential patients who want to, or must be, treated or hospitalized at JRMC. (Plaintiff's Memorandum in Opposition, Doc. No. 24, p. 5) The Eleventh Circuit rejected a similar argument in Jimenez, 596 F.3d 1304.

In Jimenez, the plaintiff doctor filed an EEOC charge claiming his medical privileges were suspended because of his race. The court found the suspension of these privileges did not implicate any right protected by § 1981 because the doctor did not have any contractual or property interest in maintaining his medical staff privileges at the hospital. Id. at 1310-11. The doctor also argued the suspension interfered with his right to contract with patients and third-party payors. Id. at 1310. The court ruled that the doctor's relationship with the patients he treated at the hospital was a benefit of the medical staff privileges to which he was no longer entitled. Moreover, future contracts he might have formed with patients admitted after his suspension were too speculative to form the basis of a §1981 claim. Id.

As in Jiminez, Dr. Adem's relationships with patients and colleagues at JRMC was a benefit of having privileges there. As discussed above, his privileges were not contractual. Therefore, the effect of having those privileges terminated cannot be contractual and cannot form the basis of a §1981 claim. The same conclusion precludes Dr. Adem's claim regarding potential "business opportunities" with colleagues at JRMC. Jiminez, 596 F.3d at 1310. Accordingly, Defendants' motion to dismiss Count III will be granted.

Defendants have asked the Court not to exercise supplemental jurisdiction over Dr. Adem's remaining claims, and Dr. Adem has not objected or otherwise responded to their request. (Memorandum in Support, Doc. No. 18, p. 15) District courts "may decline to exercise supplemental jurisdiction over" a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Count III is the only count over which this Court has original jurisdiction. Because Defendants' motion to dismiss is granted as to Dr. Adem's federal law claim, there are no claims remaining over which the Court has

original jurisdiction. Thus, the Court may decline to exercise supplemental jurisdiction to hear the remaining claims. Because the Court sees no reason why the parties should not adjudicate this dispute in state court, the Court declines to exercise supplemental jurisdiction over the remaining claims and will dismiss those claims without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Jefferson Memorial Hospital Association d/b/a Jefferson Regional Medical Center and Warren Mark Breite, M.D.'s Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim Upon Which Relief can be Granted and for Lack of Subject Matter Jurisdiction [17] is **GRANTED**. Count III of the First Amended Complaint is dismissed, with prejudice, for failure to state a claim. Because this Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, Counts I, II, IV and V are dismissed without prejudice to be refiled in state court.

**IT IS FURTHER ORDERED** that Plaintiff Antoine Adem M.D.'s Motion for Partial Summary Judgment [33] is **DENIED** as moot.

A separate order of dismissal will accompany this Memorandum and Order.

Dated this 13th day of November, 2012.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE